UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

INTERNATIONAL UNION OF PAINTERS &
ALLIED TRADES, DISTRICT COUNCIL NO. 4,                  COMPLAINT

GREGG SMITH, PAUL CANNING,
MIKE GUTIERREZ, MARK KOMAROMI,                          Case No.:
CHARLIE MEADOWS, RON KNIESS,
RYAN ANDERSON, KEITH COSTANZO,
CLARK ANDERSON, BRAD PINCHOT,
PENNY MCDONALD, PAUL MORALES,
JOE CLABBERS, and TOM CARNEY,
as Trustees of the International
Painters and Allied Trades Industry Pension Fund

                              Plaintiffs,

-against-

HILLSTAR PROMOTIONS, LTD. , and
WILLIAM HILLIKER

                              Defendants.

---

Plaintiffs INTERNATIONAL UNION OF PAINTERS & ALLIED TRADES, DISTRICT

COUNCIL NO. 4 (the "Union"), and GREGG SMITH, PAUL CANNING, MIKE GUTIERREZ,

MARK KOMAROMI, CHARLIE MEADOWS, RON KNIESS, RYAN ANDERSON, KEITH

COSTANZO, CLARK ANDERSON, BRAD PINCHOT, PENNY MCDONALD, PAUL

MORALES, JOE CLABBERS, and TOM CARNEY, as Trustees of the International Painters and

Allied Trades Industry Pension Fund ("IUPAT Pension Fund ") (collectively the "Funds," "Trusts,"

and/or "Trustees of the Funds"), by and through their attorneys Lipsitz Green Scime Cambria LLP,

as and for their Complaint against Defendants HILLSTAR PROMOTIONS, LTD.  ("HILLSTAR")

and WILLIAM HILLIKER ("HILLIKER"), herein alleges as follows:

7419676v1 - 032474.0084

**NATURE OF THE ACTION AND JURISDICTION**

1.      This is a civil action brought pursuant to, *inter alia*, Sections 502(a)(3) and 515 of the Employee Retirement Income Security Act ("ERISA") as amended (29 U.S.C. § § 1132(a)(3)), and 1145), and Section 301 of the Labor-Management Relations Act of 1947 (29 U.S.C. § 185) ("LMRA") by the Union and the Trustees of the Funds for breach of contract, injunctive and other equitable relief.

2.      This Complaint alleges that by failing, refusing and/or neglecting to comply with specific statutory and contractual obligations, Defendant HILLSTAR violated its collective bargaining agreement with Plaintiff Union, the respective trust agreements of the Funds, ERISA and/or the LMRA.

3.      This Complaint further alleges that Defendant HILLIKER, as the controlling officer and managing agent of Defendant HILLSTAR, and as a fiduciary within the meaning of Section 3(21) of ERISA (29 U.S.C. §§ 1002(21)(A)), breached his fiduciary duty to the Funds by failing to effect payment of employee fringe benefit contributions from Defendant HILLSTAR to the Funds.

4.      Jurisdiction of this Court is invoked under the following statutes:

(a)      Section 502 (e) (1) and (f) of ERISA [29 U.S.C. §1132(e)(1) and (f)]:

(b)      Section 301 of the LMRA (29 U.S.C. §185):

(c)      28 U. S. C. §1331 (federal question);

(d)      28 U. S. C. §1337 (civil actions arising under the Act of Congress regulating commerce);

(e)      28 U. S. C. § 1367 (supplemental jurisdiction).

2

5.    Venue properly lies in this district under Section 502(e)(2) of ERISA [(29 U. S. C. §1132 (e)(2)] and Section 301 of LMRA (29 U. S. C. § 185).

## PARTIES

### A. Plaintiff Labor Union

6.    Plaintiff Union is a labor organization within the meaning of 29 U.S.C. §§ 152(5) and 185, which represents employees in an industry affecting commerce, as defined in 29 U.S.C. § 142 and 29 U.S.C § 1002(4).

7.    Plaintiff Union maintains an office at 585 Aero Drive, Cheektowaga, New York.

8.    Plaintiff Union, pursuant to the terms of various collective bargaining agreements between Plaintiff Union and signatory employers, collects union dues and assessments which such employers deduct from employees' wages and remit to Plaintiff Union.

### B. Plaintiffs Trustees of the International Funds

9.    Plaintiffs GREGG SMITH, PAUL CANNING, MIKE GUTIERREZ, MARK KOMAROMI, CHARLIE MEADOWS, RON KNIESS, RYAN ANDERSON, KEITH COSTANZO, CLARK ANDERSON, BRAD PINCHOT, PENNY MCDONALD, PAUL MORALES, JOE CLABBERS, and TOM CARNEY, are the individual Trustees of jointly administered, multi-employer, labor-management trust funds established and maintained pursuant to various collective bargaining agreements in accordance with 29 U.S.C §§ 186(c)(5) and 186(c)(6), namely, the IUPAT Pension Fund .

10.    The IUPAT Pension Fund is an employee benefit plan within the meaning of 29 U.S.C. § 1002(2) and (3) and is a multi-employer plan within the meaning of 29 U.S.C. §§ 1002(37) and 1145.

7419676v1 - 032474.0084

11. The purpose of the IUPAT Pension Fund is to provide benefits to eligible union employees on whose behalf employers contribute to the IUPAT Pension Fund pursuant to collective bargaining agreements between employers and the Union. The IUPAT Pension Fund shall include amounts received or held on behalf of the Trustees under both the IUPAT Pension Plan and the International Painters and Allied Trades Industry Annuity Plan.

12. The IUPAT Pension Fund is an authorized collection agent for the International Painters and Allied Trades Finishing Trades Institute ("IUPAT FTI"), the International Painters and Allied Trades Labor Management Cooperation Initiative ("IUPAT LMCI"), and the International Painters and Allied Trades Political Action Together Fund ("IUPAT PAT") (collectively with the IUPAT Pension Fund, FTI and LCMI, "International Funds")

13. The IUPAT FTI is a jointly administered, multi-employer, labor-management trust fund established and maintained pursuant to various collective bargaining agreements in accordance with 29 U.S.C §§ 186(c)(5) and 186(c)(6). The IUPAT FTI is an employee benefit plan within the meaning of 29 U.S.C. § 1002(1), (3), and is a multi-employer plan within the meaning of 29 U.S.C. §§ 1002(37) and 1145. The purpose of the IUPAT FTI is to provide apprentice training and journeyperson retraining to eligible union employees on whose behalf employers contribute to the IUPAT FTI pursuant to collective bargaining agreements between employers and the Union.

14. The IUPAT LMCI is a joint labor-management, non-profit trust formed under Section 302(c)(9) of the Taft-Hartley Act (29 U.S.C. § 186(c)(9)). The purpose of the IUPAT LMCI is to expand job opportunities for union painters and allied tradesmen and their signatory contractors through labor-management cooperative programs.

7419676v1 - 032474.0084

15.     The IUPAT Pension Fund maintains it office and is administered at 7234 Parkway Drive, Hanover, Maryland.

16.     Plaintiff Trustees of the Funds are fiduciaries within the meaning of 29 U.S.C. §§ 1002(21) and 1132 and bring this action in their fiduciary capacities.

## D. Defendants

17.     Upon information and belief, at all times material hereto, Defendant HILLSTAR has been a for-profit domestic business corporation with a principal business address located at 1594 South Park Avenue, Buffalo, New York and is an employer within the meaning of Sections 3(5) and 515 of ERISA (29 U.S.C. §§ 1002(5) and 1145) and has been an employer in an industry affecting commerce within the meaning of Section 301 of the Taft-Hartley Act (29 U.S.C. § 185).

18.     Upon information and belief, at all times material hereto, Defendant HILLIKER is and has been the controlling officer and managing agent of Defendant HILLSTAR and a fiduciary within the meaning of Section 3(21) of ERISA (29 U.S.C. §§ 1002(21)(A)) with respect to contributions to the Funds that are currently due and owing and which may become due and owing to the Funds from Defendant HILLSTAR during the pendency of this action.

19.     Upon information and belief, at all times material hereto, Defendant HILLIKER resides and is domiciled in Erie County, New York.

## THE AGREEMENTS

20.     At all times relevant hereto, Defendant HILLSTAR was (and is) a signatory to a collective bargaining agreement with Plaintiff Union (the "CBA").  A true and correct copy of the CBA between Plaintiff Union and Defendant HILLSTAR during the contribution periods sued for herein is attached hereto as **Exhibit A**. A copy of the signatory sheet signed by HILLIKER as

7419676v1 - 032474.0084

President of HILLSTAR and on behalf of HILLSTAR is attached hereto as **Exhibit B**.

21.     The CBA binds Defendant HILLSTAR to the Trust Agreements for the Funds.

22.     CBA Article XIII – Hours, Wages and Overtime, Section 7 – Wages and Fringe Benefits, lists the fringe benefits Hillstar, as signatory to the CBA, was required to contribute for every hour of work performed by a covered employee. Ex. A, p. 15.  As set forth in the CBA, Hillstar was required to contribute to IUPAT Pension, Annuity, FTI and LMP Funds. *Id*.

23.     Defendant HILLSTAR has not withdrawn from the CBA.  Defendants have not provided Plaintiffs with a written notice of desire to cancel or termination the Agreement.

24.     A copy of the Restated Agreement and Declaration of Trust ("Trust Agreement") for the IUPAT Pension Fund is attached hereto as **Exhibit C**.  Employer contributions due and owing to the IUPAT Pension Fund constitute assets of the IUPAT Pension Fund. *See* Ex. C, Art. I, Sec. 10, p. 5.

25.     The Trust Agreement requires that all IUPAT Pension Plan contributions and IUPAT Annuity Plan contributions be made payable to the "IUPAT Industry Pension Fund." Ex. C, Art. VI, sec. 2, p. 15.

26.     Pursuant to the terms of the CBA and Trust Agreements for the IUPAT Pension Fund, Defendant HILLSTAR is required, *inter alia*, to:

    a. File contribution reports (sometimes referred to as "Remittance Reports") by the twentieth (20th) day of the month following the month during which the work covered by the applicable CBA (hereinafter referred to as "covered work") was performed;

    b. Pay by the twentieth (20th) day of the month following the month during which the

6

7419676v1 - 032474.0084

covered work was performed monetary contributions to the International Funds at the rates set forth in the CBA for all hours of work performed by Defendant HILLSTAR's employees covered by the CBA;

c. Deduct Union membership dues and dues assessments from the wages of each of its employees performing covered work at the rates set forth in the CBA and remit such deducted Union membership dues to Plaintiff Union by the fifteenth (15th) day of the month following the month during which the covered work was performed by its employees; and,

d. Submit to a payroll audit conducted by Plaintiffs' accountants to determine or verify the amounts due and owing the International Funds under the CBA.

## REMEDIES FOR BREACH OF OBLIGATIONS TO THE FUNDS AND UNION

27. Pursuant to the terms of Section 515 of ERISA (29 U.S.C. § 1145), employers such as Defendant HILLSTAR are required to pay employee fringe benefit contributions to Plaintiffs in accordance with the terms and conditions of the CBA.

28. Failure to make such payment or to timely effect payment of the contributions constitutes a violation of the CBA and Section 515 of ERISA (29 U.S.C. § 1145).

29. Section 502 of ERISA (29 U.S.C. § 1132) provides that, *inter alia*, upon a finding of an employer violation as set forth above, the Funds shall be awarded the unpaid contributions, plus double interest on the unpaid and/or untimely paid contributions (computed at the rate provided under a fund's plan or, if none, at the rate prescribed under Section 6621 of Title 26 of the United States Code [26 U.S.C. § 6621]), together with reasonable attorneys' fees and costs of the action, and such other legal or equitable relief as the court deems appropriate.

7419676v1 - 032474.0084

30.    Pursuant to ERISA Sections 403(a) and 404, the applicable regulations and case law, fiduciaries of an employee benefit fund are personally liable for fund assets that were not properly payable to them and which were retained and/or diverted for their own use or benefit.

31.    Pursuant to the IUPAT Pension Fund 's "Policy and Procedure for the Collection of Delinquent Contributions," ("IUPAT Collection Policy") and the 2023 Modification to the Collection Procedures of the International Union of Painters and Allied Trades Pension Fund ("2023 Modification") the IUPAT Pension Fund is entitled to interest equal to ten percent (10.0%) of the gross amount of the contribution due the Fund for each month or part of a month the contribution remains due.  The delinquent employer shall also be required to pay liquidated damages equal to twenty percent (20%) of the unpaid amount if litigation becomes necessary to collect the amount owed. A copy of the IUPAT Collection Policy is attached hereto as **Exhibit D**. A copy of the 2023 Modification is attached hereto as **Exhibit E**.

32.    Pursuant to the terms of the IUPAT Collection Policy and the CBA, signatory employers are required to pay contributions to the International Funds by the twentieth (20th) day of the month following the month during which the covered work was performed by its employees.

33.    The failure of an employer to pay contributions to the Funds, or to retain and remit the withheld Union dues and dues assessments to Plaintiff Union, constitutes a breach of contract between an employer and a labor organization within the meaning of Section 301 of the Taft-Hartley Act (29 U.S.C. § 185).

34.    Pursuant to the terms of the CBA, signatory employers are required to remit Union membership dues and dues assessments deducted from each union employee's wages to plaintiff Union by the fifteenth (15th) day of the month following the month during which the covered work

8

was performed by its employees.

35.     The failure of an employer to retain and remit the withheld Union dues and dues assessments to Plaintiff Union constitutes a breach of contract between an employer and a labor organization within the meaning of Section 301 of the Taft-Hartley Act (29 U.S.C. § 185).

**AS AND FOR A FIRST CLAIM FOR RELIEF**

**(PLAINTIFF TRUSTEES OF THE IUPAT PENSION FUNDS'
CLAIM AGAINST DEFENDANTS HILLSTAR
AND WILLIAM HILLIKER FOR DELINQUENT EMPLOYEE FRINGE
BENEFIT CONTRIBUTIONS TO THE INTERNATIONAL FUNDS)**

36.     Plaintiffs repeat and reallege each and every allegation alleged above as if fully set forth herein.

37.     Pursuant to the CBA, Defendant HILLSTAR is required to make full and timely payments to the International Funds for all covered work performed by its employees at the rates and times set forth in the CBA.

38.     Upon information and belief, at all times relevant hereto, Defendant HILLIKER was and is the principal officer and managing agent of Defendant HILLSTAR, and was and is responsible for the submission of remittance reports setting forth the total of all contributions owing to the International Funds, and for remitting such amounts to the International Funds on or before the dates set forth in the CBA.

39.     Upon information and belief, at all times relevant hereto, as the principal officers and managing agents of Defendant HILLSTAR, Defendant HILLIKER had the authority to, and did make decisions as to how the assets of Defendant HILLSTAR would be distributed, including, *inter-alia,* what creditors of Defendant HILLSTAR would or would not be paid by Defendant

9

HILLSTAR.

40.     Upon information and belief, Defendant HILLIKER decided that Defendant HILLSTAR would not pay contributions to the International Funds, as required by the CBA, for work performed by employees of Defendant HILLSTAR during the Relevant Period.

41.     Upon information and belief, Defendant HILLSTAR failed to remit employee fringe benefit contributions to the International Funds for work performed by its employees covered by the CBA during the Relevant Period.

42.     As a result of work performed by individual Union members employed by Defendant HILLSTAR, pursuant to the CBA, delinquent employee fringe benefit contributions for the IUPAT Pension Fund in the total amount of $23,010.53 are due and owing to Plaintiffs Trustees of the International Funds from Defendant HILLSTAR for covered work performed during the Relevant Period.

43.     At such time as fringe benefit contributions became due and payable to the IUPAT Pension Fund by Defendant HILLSTAR, such fringe benefit contributions became assets of the Funds pursuant to the CBA, the Declarations of the Funds and applicable law.

44.     Defendant HILLIKER was a fiduciary with respect to the delinquent contributions owing from Defendant HILLSTAR to the International Funds for covered work performed by Defendant HILLSTAR's employees during the Relevant Period at the time such contributions became due and payable to the International Funds by Defendant HILLSTAR, pursuant to Section 3(21) of ERISA (29 U.S.C. §§ 1002(21)(A)).

45.     Further, Defendant HILLIKER is a fiduciary with respect to any contributions required to be made by Defendant HILLSTAR during the pendency of this action at the time such

7419676v1 - 032474.0084

contributions become due and owing to the International Funds pursuant to the CBA.

46.     Defendant HILLIKER breached his respective fiduciary duties with respect to the International Funds by failing to make payment from Defendant HILLSTAR to the International Funds for covered work performed by its employees during the Relevant Period in violation of ERISA Section 409(a) (29 U.S.C. §1109).

47.     Defendant HILLSTAR's failure to timely make payment of employee fringe benefit contributions to the International Funds constitutes a violation of the CBA and of Section 515 of ERISA (29 U.S.C. § 1145).

48.     Accordingly, pursuant to the CBA and Section 502 of ERISA (29 U.S.C. § 1132), Defendants HILLSTAR and HILLIKER are liable, jointly and severally, to Plaintiff Funds for:

    a.  Delinquent employee fringe benefit contributions to the International Funds in the amount of $17,136.52 for covered work performed by Defendant HILLSTAR's employees during the Relevant Period, plus any additional amounts which may become due and owing during the pendency of this lawsuit; and

    b.  Interest on the unpaid and/or untimely paid contributions in the amount of $2,446.71, and which shall continue to accrue during the pendency of this action;

    c.  Liquidated damages on the unpaid and/or untimely paid contributions in the amount of $3,427.30; and,

    d.  Reasonable attorneys' fees and costs incurred by Plaintiffs in this action.

7419676v1 - 032474.0084

## AS AND FOR A SECOND CLAIM FOR RELIEF

### (PLAINTIFF UNION'S CLAIM AGAINST DEFENDANT HILLSTAR FOR UNREMITTED UNION MEMBERSHIP DUES AND DUES ASSESSMENTS)

49.     Plaintiffs repeat and reallege each and every allegation alleged above as if fully set forth herein.

50.     Pursuant to the CBA, Defendant HILLSTAR is required to pay monies withheld from employees' wages in the form of membership dues and dues assessments directly to Plaintiff Union for all hours worked by its employees covered by the CBA.

51.     Upon information and belief, Defendant HILLSTAR withheld Union membership dues and dues assessments from its employees that performed work covered by the CBA during the Relevant Period.

52.     Upon information and belief, Defendant HILLSTAR has failed to remit any of the membership dues or dues assessments withheld by it from employees' wages to Plaintiff Union for covered work performed by its employees during the Relevant Period.

53.     As a result of work performed by individual employees of Defendant HILLSTAR, pursuant to the CBA, membership dues and dues assessments withheld by defendant in the amount of $1,839.20 are due and owing to plaintiff Union from Defendant HILLSTAR for covered work performed by Defendant HILLSTAR's employees during the Relevant Period.

54.     Accordingly, pursuant to the CBA, Defendant HILLSTAR is liable to plaintiff Union for:

     a.  Unpaid membership dues and dues assessments in the amount of $12,128.82 for covered work performed by its employees during the Relevant Period plus any

7419676v1 - 032474.0084

additional amounts which may come due during the pendency of this lawsuit; and

b.  Reasonable attorneys' fees and costs incurred by Plaintiffs in this action.

**WHEREFORE**, Plaintiffs Union and Trustees of the Funds demand judgment as follows:

(a)    On Plaintiffs' First Claim For Relief, judgment against Defendants HILLSTAR and HILLIKER for payment of delinquent employee fringe benefit contributions to the IUPAT Pension Fund for the Relevant Period in the amount of $23,010.53, plus any further fringe benefit contributions that may become due and owing to said International Funds during the pendency of this action, together with interest on the delinquent contributions at the rate of 10.0% per month in the amount of $2,446.71, which interest shall continue to accrue during the pendency of this action, plus liquidated damages on the unpaid and/or untimely paid contributions in the amount of $3,427.30; and the costs and attorneys' fees incurred by Plaintiffs in bringing this action, pursuant to the CBA and ERISA Section 502(g)(2); and

(b)    On Plaintiffs' Second Claim for Relief for payment of unremitted union membership dues and dues assessments withheld from the wages of Defendant HILLSTAR's employees for the Relevant Period in the amount of $12,128.82, plus any additional amounts that may become due and owing from Defendant HILLSTAR as and for unremitted Union membership dues during the pendency of this action, together with lawful interest thereon, and the reasonable costs and attorneys' fees incurred by Plaintiffs in bringing this action; and

(c)    For such other and further relief as the Court deems just and proper.

13

Dated: April 13, 2026
       Buffalo, New York

                    LIPSITZ GREEN SCIME CAMBRIA, LLP


                    /s/ Candace Morrison
                    Candace Morrison, Esq.
                    *Attorneys for Plaintiffs*
                    42 Delaware Avenue, Suite 120
                    Buffalo, New York 14202
                    (716) 849-1333 ext. 456
                    cmorrison@lglaw.com

7419676v1 - 032474.0084