# EXHIBIT D

# POLICY AND PROCEDURE FOR THE COLLECTION OF

# DELINQUENT CONTRIBUTIONS

# AND

# PAYROLL AUDITS

## of the

# INTERNATIONAL PAINTERS AND ALLIED TRADES

# INDUSTRY PENSION FUND

Effective September 1, 2014

## IUPAT INDUSTRY PENSION FUND
## POLICY FOR THE COLLECTION OF
## DELINQUENT CONTRIBUTIONS
## AND PAYROLL AUDITS
## (as amended September 1, 2014)

The undersigned Trustees ("Trustees") of the IUPAT Industry Pension Fund which is a multiemployer employee benefit plan, amend and restate the Board's policy for the collection of employer contributions owed to the Fund as set forth below. This amended Policy shall be effective on and after September 1, 2014 ("Effective Date").

### BACKGROUND

The failure of employers to contribute or make other required payments and/or reports to the Fund respecting hours worked by eligible employees seriously impairs the Fund's ability to provide benefits and services to all participants and beneficiaries. For that reason, the Trustees are required under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and the U.S. Department of Labor's Prohibited Transaction Class Exemption No. 76-1, to adopt and systematically enforce an effective and comprehensive procedure to collect all employer contributions owed to the Fund. This procedure is promulgated pursuant to the legal authority vested in the Trustees under law, the Agreement and Declaration of Trust creating the Fund, and collective bargaining agreements.

### CONTRIBUTION OBLIGATION

1.      **Requirement for Written Agreement to Contribute.** No employer shall be permitted to contribute to the Fund without having signed or otherwise agreed to be bound by a collective bargaining agreement or other participation agreement requiring contributions to the Fund for hours paid or worked by covered employees. For the purposes of this Policy, the Union and its affiliates, and affiliated entities, shall be considered an employer and shall be permitted to contribute to the Fund in accordance with a signed Participation Agreement. The Fund shall not accept contributions from any employer unless the Fund Administrator has received a signed collective bargaining agreement or other written agreement between the employer and the Union or, where appropriate, the Fund, obligating the employer to make contributions to the Fund, or other evidence (e.g., membership in a multiemployer bargaining group with authorization to bargain and execute agreements on behalf of the Employer; submission of Remittance Reports acknowledging status as a signatory, etc.) of the employer's obligation to make contributions to the Fund (hereinafter, "Signatory Employers"). Contributions submitted before submission of a signed agreement or other adequate evidence of a contributory obligation will be held in abeyance pending receipt of an agreement or other adequate evidence of a contributory obligation. Upon approval by the Fund, contributions held in abeyance will be returned to the employer without interest (and subsequent to reduction for any benefits, or other direct or indirect costs or liabilities incurred or paid by the Fund) if a signed agreement evidencing the contributory obligation is not received by the Fund.

The Fund Administrator shall be provided with copies of all such documents, shall maintain an up-to-date list of all Signatory Employers, and shall timely and regularly inform the Trustees of the receipt of contributions from all employers that have not provided a signed agreement evidencing an obligation to contribute to the Fund.

2.     **Time and Manner of Payment.**   A Signatory Employer shall make contributions to the Fund in accordance with its collective bargaining agreement or other written agreement with the Fund and in accordance with the following rules:

(a)     Contributions due to the Fund shall be paid monthly (unless required to contribute weekly) on or before the date required in the collective bargaining agreement or Participation Agreement or, if no such date is stated, by the twentieth of the month following the month in which the obligation to contribute arose, unless otherwise permitted or required by the Trustees (hereinafter, "the Due Date").  This provision notwithstanding, the Trustees, or the Fund Administrator, shall be and are empowered to establish or modify the Due Date for the contributions owed by any Signatory Employer, upon written notice to such Employer.

(b)     On or before the Due Date, each Signatory Employer shall report the amount due the Fund on a form supplied by the Fund ("Remittance Form"), which form shall be submitted with the contributions due for the reported month. The Signatory Employer shall file a Remittance Form on the Due Date of each month even if no money is due.  On the Remittance Form, the Signatory Employer shall specify the weeks reported, the employees covered by the report, each employee's Social Security number, the number of hours worked by each employee, the total amount due to each Fund on account of those hours, the total amount remitted to each Fund with the report, and any other information requested or required by the Fund Administrator.  The Fund may rely on the Signatory Employer's report of work, employees covered by the report, Social Security numbers, and other relevant factors in administering benefits and calculating amounts due the Fund.  The Remittance Form shall be treated as a statement to an employee benefit plan subject to criminal penalties for falsification under federal law and may be the subject of an action for damages.  A Remittance Form must be signed by an officer or other agent of the Signatory Employer authorized to bind the Signatory Employer on such matters.

(c)     Payments shall be credited on a first-in, first-out basis based on the Due Date for any payment, and be applied to interest, collection costs, liquidated damages and contributions for any month in that order unless otherwise required by law or by agreement of the Trustees.

3.     **Bonds or Other Security.**  In addition to the bonding requirements in the Signatory Employer's collective bargaining agreement or other written contribution agreement, the Trustees may, in their discretion, require the following classes of Signatory Employers to post additional security for their contribution obligation: (a) Signatory

Employers who are delinquent in the payment of contributions to the Fund; (b) Signatory Employers with a history of Delinquency problems including untimely and/or insufficient payments; (c) new participating Signatory Employers; (d) Signatory Employers who have not otherwise provided a sufficient bond; and (e) Signatory Employers who are expected to have payment problems based on information obtained by the Trustees. In such cases, the Signatory Employer shall post security in the form of a fringe benefit surety bond from an insurance company or other reputable and acceptable issuer of such instruments licensed to do business within the State or Commonwealth in which work is occurring to guarantee timely payment of contributions, interest, liquidated damages, collection costs (including attorney fees) and audit costs.

Evidence of current or continuing coverage shall be provided to the Fund Administrator, who shall maintain such information on the list of Signatory Employers referred to above.

## DELINQUENCIES

4.    **Delinquency**. A Delinquency shall exist if any contributions for a month are not received by the Fund by the Due Date, and/or if the Fund have not received a properly signed and completed Remittance Form for a month by the Due Date (a "Delinquency").

5.    **Interest and Liquidated Damages**. A Signatory Employer who has not paid its required contributions for a month and/or has not submitted a Remittance Form reporting those contributions that complies with the requirements above shall, in addition to the unpaid contributions, be required to pay interest equal to one percent (1%) of the gross amount of the contributions due the Fund for each month (or part of a month) the contributions remain unpaid. For purposes of the foregoing sentence, by the "due date" shall mean received by and in the possession of the Fund. If a Signatory Employer fails to cure a Delinquency in payments (including contributions and interest) and the matter is referred to Fund counsel for collection, the Signatory Employer shall also be required to pay liquidated damages equal to twenty percent (20%) of the amount unpaid at the time of the referral if litigation becomes necessary to collect the amount(s) owed. These interest and liquidated damage assessments represent a reasonable estimate of the additional direct cost placed on the Fund's office and indirect or intangible costs (accounting, actuarial, administrative, etc.) occasioned by inaccurate or late data, and/or inaccurate or late payment, in conducting the affairs of the Fund. A Signatory Employer may appeal an assessment of interest and/or liquidated damages within sixty (60) calendar days of notice from the Fund for good cause. The Trustees shall have the right to waive any interest and/or liquidated damage assessment if, in their sole and exclusive discretion, such waiver is in the best interests of all participants and beneficiaries in light of all of the relevant factors.

6.    **Delinquency Notice.**  The following notices shall be sent to a delinquent Signatory Employer:

(a)    By the Fund.  The Fund Administrator will notify a Signatory Employer in writing of a Delinquency in monthly payments or Remittance Form deficiencies ("Delinquency Notice") within ten (10) working days after the Due Date or as soon as practicable thereafter.  The Delinquency Notice shall advise the Signatory Employer of the nature and amount of the Delinquency and may additionally inform the Signatory Employer of the interest, penalties and other assessments that will be due if the Delinquency is not immediately cured.  Copies of the Delinquency Notice shall be sent to the Union.  The failure of the Fund's Administrator to send a Delinquency Notice shall not constitute a defense against a claim by the Fund for delinquent contributions, penalties, interest, or other fees and expenses. If the employer has not adequately responded to the Delinquency Notice or resolved the matter with fifteen (15) days, a second Delinquency Notice will be forwarded to the Delinquent Employer.  This notice shall also inform the Delinquent Employer that the matter will be referred to Fund Counsel if not resolved immediately.

(b)    By Fund Counsel.  If the Employer fails to deliver to the Fund all sums and forms specified in the Delinquency Notice within ten (10) days after such second notification, the matter may be referred to Fund counsel for collection.  Fund counsel shall thereupon send a notice to the Employer advising that if all past due amounts (including, without limitation, contributions, interest and liquidated damages) are not paid within ten (10) days, a lawsuit shall be filed in the United States District Court. Copies of the notice from Fund Counsel shall be sent to the Union.

(c)    The Fund Administrator, upon recommendation by the Delinquency Officer/Director, may extend or waive the time limits for notices in subsections (a) or (b) if it is in the process of negotiating a settlement, but all appropriate cases shall be referred to Fund Counsel within 180 days of a Delinquency, unless further extension is approved by the Co-Chairmen.

7.    **Bond Claim Notice/Escrows.**

(a)    Claim Against the Fringe Benefit Bond.  In the event an Employer does not submit a Remittance Form and/or remit payment of its contributions within ninety (90) days of the Due Date, the Trustees may direct Fund Counsel to draw upon the Bond, if any, or other Security for payment of contributions due to the Fund.  Written notice of a claim on the Bond and demand for payment shall be sent to the appropriate entity by certified mail, return receipt requested, with a copy to the Signatory Employer.  The Signatory Employer shall be treated as making payment on the date of payment to the Fund pursuant to the Bond for purposes of determining any interest or other charges under this Delinquency Policy.  The Signatory Employer shall restore the Bond to its required

Policy and Procedures for Collections_Sept 2014

4

level within thirty (30) days of notice from the Fund Administrator to so restore the Bond, and may be treated as delinquent absent timely restoration.

(b)    Claim Against Labor and Material Bonds. Contemporaneous with the referral of a Delinquency to Fund counsel, the Fund Administrator shall request information from the Union concerning the identity of all projects on which the Signatory Employer is working or worked during the Delinquency period, the identity of the general contractor, the name and address of the insurer who underwrote any labor and materialmen's payment bond for the general contractor and/or Signatory Employer on the project, and the bond number.   Upon receipt of this information, a claim may be made on the labor and materialmen's payment bond, if any.

8.    **Collection Costs.** The Fund may assess and collect attorney fees, court costs, accountant and auditor fees and other collection or enforcement costs on any Delinquency not cured by the last day of the month following the month including the Due Date ("the Cure Date"), whether or not a Delinquency Notice is given or litigation is commenced.

9.    **Litigation.** The Trustees or the Fund Administrator may refer cases to Fund counsel under the following guidelines.

(a)    The Trustees may refer a case directly to Fund counsel if a Delinquency is not cured within ten (10) calendar days of a Delinquency Notice and the actual or estimated amount involved exceeds $2,000.  Upon receipt of the Delinquency referral, Fund counsel shall contact the delinquent Employer to secure payment of the Delinquency and/or to negotiate a payout with accompanying security, if possible, subject to approval by the Trustees or the Fund Administrator.

(b)    The Trustees may ratify actions that do not conform to these rules if, in their sole and exclusive discretion, the Trustees determine that such ratification is in the best interests of all participants and beneficiaries in light of all of the relevant factors.  A lack of compliance with any portion of this Policy shall not be a defense for a Signatory Employer.

(c)    The Co-Chairmen of the Board of Trustees shall be authorized to represent and act for the Fund and all of their Trustees and any other party-plaintiff as fiduciaries and plaintiffs in any lawsuit or other action to collect a Delinquency or secure compliance with Fund rules and to approve settlements of disputes on behalf of the Fund. The Co-Chairmen shall be, and hereby are, authorized to delegate this power, including approval of settlements, to the Fund Administrator.

Policy and Procedures for Collections_Sept 2014

(d)     The Fund shall be entitled to recover any underpayment of contributions, interest, liquidated damages equal to twenty percent (20%) of the gross amount of the unpaid contributions due at the time of referral, all attorney, auditor and accountant fees, and costs incurred by the Fund in connection with the prosecution of the litigation and collection or enforcement of any judgment obtained by the Fund.  Once referred to Fund counsel, all of the foregoing shall be recoverable by the Fund even if no lawsuit or other legal action is filed.  Remedies under this policy shall be in addition to, and shall not supplement or replace, any other remedy provided by law.

10.     **Reports**.  The Fund Administrator or the Delinquency Officer/Director shall report on the status of all Delinquencies at each regularly-scheduled meeting of the Trustees.  To the extent that information is available, the report shall identify:

(a)     each delinquent Employer,

(b)     the time periods covered by the Delinquency,

(c)     the date any payments and/or Remittance Reports were submitted,

(d)     the amount of the Delinquency, including the amount of any interest; any liquidated damages; any attorney, auditor or accountant fees; and any other costs incurred by the Fund,

(e)     the existence of any Bond or other security that secured any or all of the delinquent obligation, and

(f)     whether the Delinquency has been referred to Fund counsel.

Fund counsel shall report on the status of any Delinquencies matters referred to it by the Trustees.

11.     **Settlements**.

(a)     The Trustees, the Co-Chairmen or their designee may settle any Delinquency based on the costs and risks of litigation and collection in accordance with the U.S. Department of Labor's Prohibited Transaction Class Exemption 76-1.  In that regard, the Trustees reserve the right, in their sole and exclusive discretion after consultation with Fund counsel, to modify or waive the foregoing Delinquency collection procedures where the facts and circumstances of a particular case so dictate and to do so is in the best interest of the Fund and their participants and beneficiaries.  A settlement may provide for payment over time, security or other measures and, when appropriate, may compromise amounts due and owing.

Policy and Procedures for Collections_Sept 2014

6

(b)    The Co-Chairmen of the Board of Trustees, or in the event of a conflict for the Employer Trustee, then another Employer Trustee, are authorized to approve commencement of litigation or a settlement of any Delinquency.  The Co-Chairmen may delegate or assign these responsibilities to the Fund Administrator.

## COMPLIANCE AUDITS

12.    **Audits**.

(a)    The Trustees shall engage the services of one or more auditors to conduct audits of Signatory Employers books, records, and accounts to verify the accuracy of contribution payments and reporting to the Fund consistent with the requirements of generally accepted accounting principles ("GAAP") and Prohibited Transaction Class Exemption 76-1.  Signatory Employers shall be audited on a targeted, random, or scheduled basis.  Random audits shall be conducted consistent with regulations adopted by the U.S. Department of Labor.  The Trustees shall have the right, within their sole and exclusive discretion, to audit an Employer as often as is necessary to ensure that the Employer is complying with its contributory obligation.

(b)    The Payroll Auditor is hereby authorized to audit all financial, personnel and other related records, including, without limitation, the payroll, wage and tax records of an Employer or its agents, subcontractors, affiliates and others that are relevant to determining the accuracy of contributions to the Fund and the Signatory Employer's adherence to the requirements of the contribution agreement regarding coverage and contributions, including but not limited to: payroll, wage and tax records of any individual or entity that the Trustees or their designated representative believe may be subject to the Employer's contribution obligation; federal and state income and employment tax returns; payroll, cash and general disbursements journal(s); and accounts payable and accounts receivable journals.  Nothing in this provision shall prohibit or limit an auditor, acting on behalf of the Fund, from requesting additional employer records that it deems appropriate to determine or verify the contribution obligation owed to the Fund, or appropriate interest or damages owed.

13.    **Project Records To Be Maintained By Employer**.  Employers shall maintain records such that a determination can be made by the Payroll Auditor of each project on which the Employer performed work in any given period and the number of hours worked on each such project by each employee on whose hours the Employer is required to remit contributions to the Fund, and Employers shall be required to make these records available to the Fund upon request.

14.    **Employer Consultation**.  The compliance audit report shall be forwarded to an Employer for the Employer's review and comment, unless the Fund Administrator, Fund counsel or the Trustees believe collection may be jeopardized by such

Policy and Procedures for Collections_Sept 2014

7

disclosure.  The compliance audit report shall be accompanied by written notice that payment of any Delinquency in contributions must be submitted within thirty (30) calendar days of the date of the notice.  Absent a response accompanied by documentation within thirty (30) days, the compliance report shall become final and binding on the Employer, its affiliates, and any parties-in-interest with the Employer.  The Trustees shall be provided with copies of all compliance audit reports.

15.    **Audit Costs.**  An Employer shall be charged with the cost of the compliance audit in the event that it reveals any underpayment of $500 or more.  If the audit reveals an underpayment of less than $500, the Employer shall be required to pay a $100 audit fee to the Fund.  An Employer that fails to cooperate in the auditing process (as determined by the Trustees in their sole and exclusive discretion) shall be required to pay the full cost of the audit regardless of whether the audit reveals any underpayment, plus all costs incurred to obtain the audit, including reasonable attorneys fees and costs.  The Trustees shall have the right to waive the cost of the audit if, in their sole and exclusive discretion, circumstances warrant.

16.    **Other Charges.**  Contribution deficiencies revealed by a compliance audit shall be handled in the same manner as any other Delinquency under this Delinquency Policy with respect to interest, liquidated damages, commencement of litigation, settlement, etc.

### MISCELLANEOUS

17.    **Overpayments.**  An Employer shall not unilaterally take a credit for a claimed overpayment unless the Employer received prior written notice from the Fund to apply the overpayment against current obligations. In all other cases, the Employer must submit a written request to the Fund for a refund under this Delinquency Policy.  An Employer taking an unauthorized credit shall be treated as delinquent under this Delinquency Policy and shall be charged accordingly.  It is the sole and exclusive responsibility of the Employer to discover and delineate the existence and amount of a contribution overpayment.

(a)    Any refund of an overpayment must be requested in writing by the Employer with supporting documentation within one (1) year from the date of the mistaken payment.  This is necessary to allow timely reporting and disclosure by the Fund. Contribution overpayments received by the Fund more than one (1) year prior to the date that an Employer's request for a refund is received by the Fund shall not be returned.

(b)    An overpayment discovered in a compliance audit shall be credited against an underpayment within the same plan year only in determining any Delinquency in payment due to Fund.  Other overpayments shall be refunded only under the general procedures of this Section 17.

Policy and Procedures for Collections_Sept 2014

8

(c)    The policy of Fund on overpayments shall be subject to law, including 29 U.S.C. §1103(c).  A refund shall be without interest.

(d)    The amount of excess contributions that may be credited or returned to the Employer under this Section 21, shall be the net balance after deduction of (i) audit costs, (ii) direct and indirect administrative expenses incurred in processing a refund request, and (iii) the full value or potential value of any direct or indirect cost, expenses or liability incurred by the Fund (whether asserted or capable of subsequent assertion). These deductions shall include, without limitation, the amount of any benefits paid by the Fund which would not have been paid but for the Employer's remittance of the excess contributions.

18.    **Delinquency Committee**. Upon  recommendation by the Co-Chairmen, the Trustees may appoint a Delinquency Committee consisting of at least one (1) Management Trustee and one (1) Union Trustee to act with all authority reserved to the Trustees or the Co-Chairmen under this policy.

19.    **Delegation of Audit Responsibilities or Litigation to Related Funds or Third Party Administrators.**   Where appropriate, the Fund Administrator may delegate or enter into joint arrangements for sharing random or targeted audit costs or expenses and/or to utilize the services of related Fund Counsel for collection matters, when to do so is, on a cost or appropriate basis, in the interest of the Fund.

The foregoing Delinquency Policy for the Collection of Contributions Owed to the Fund is hereby adopted by the undersigned on this 1st day of September, 2014.

Policy and Procedures for Collections_Sept 2014

9

**IUPAT INDUSTRY PENSION FUND**

**UNION TRUSTEES**                                    **MANAGEMENT TRUSTEES**

Kenneth Rigmaiden, Co-Chair                           Aristotle Aivaliotis, Co-Chair

William Candelori                                     Joseph Brescia

George Galis                                          Michael Cassidy

Robert Kucheran                                       Keith Costanzo

Mark Van Zevern                                       Jerry Haber

Harry Zell                                            Donald Steadman

Date: _____

Policy and Procedures for Collections_Sept 2014

10